IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division



|  |  |
|---|---|
| | ) |
| | ) |
| | ) |
| | ) Criminal No. 1:07cr265 |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| UNITED STATES OF AMERICA | ) Counts 1 & 4: 18 U.S.C. §§ |
| | ) 1343 (wire fraud) |
| | ) |
| v. | ) Counts 2 & 5: 18 U.S.C. §§ |
| | ) 1341 and 2(b) (mail fraud) |
| | ) |
| INGRID DINA LEVY, | ) Counts 3 & 6: 18 U.S.C. §§ |
| | ) 2314 and 2(b) (interstate |
| Defendant. | ) transportation of securities |
| | ) taken by fraud) |
| | ) |

INDICTMENT

June 2007 Term at Alexandria, Virginia

Count 1

(Wire Fraud)

THE GRAND JURY CHARGES THAT:

I.   Introduction

    1.   At all times material to this Indictment, defendant
INGRID DINA LEVY lived in the New York, New York metropolitan
area.

    2.   Since approximately November 2004, the defendant
operated (by herself or with others) several fashion clothing
websites, including, but not limited to, WWW.PERSONALSHOPER.NET,

1

WWW.RUNWAYRENEGADE.COM, WWW.BUBBLEPOPSHOP.COM, WWW.SHOPCHIC.NET, WWW.SHOPLILIE.COM, WWW.SHOPLILY.COM, and WWW.FASHIONGLOW.COM.

3.   As part of the overall scheme, defendant INGRID DINA LEVY utilized a number of identities and fictitious employees, including, but not limited to, "Dina Lev", "Lisa Bronstein", "Melanie Berenger", "Farrah Cinelli", "Warren Cross", "Helen Everhart", "Ashley Foster", "Angie Gershon", "Clarisse Ghesquire","Mike Herman", "Maria Johnson", "Dorothea Marques", "Grant Mathesson", "Jella Montague", "Isabella Rochas Rochas", "Saul Rubin", "Withney Sizemore", "Bruce A. Soenberg", "Bo", "Carla", "Denise", "Fallon", "Jayla", "Julie", "Kaylie", "Leona", "Malvina", "Mel", "Nicholas", "Shannon", "Shoshanna", "Sophia A.", "Trisha", and "EVY".

4.   As part of the overall scheme, defendant INGRID DINA LEVY utilized a number of electronic mail addresses, including, but not limited to, PersonalShoper@aol.com, ingridlevy@aol.com, bubblepopshop@aol.com, runwayrenegade@aol.com, fashionclick@aol.com, shopchicnet@aol.com, info@personalshoper.net, order@personalshoper.net, billing@shoplilie.com, service@shoplilie.com, admin@shopchic.net, checkout@shopchic.net, customerService@shopchic.net, info@shopchic.net, grant.mathesson@shopchic.net, mike.herman@shopchic.net, Status@shopchic.net, withney.sizemore@shopchic.net, fashionglowinc@yahoo.com, admin@fashionglow.com, checkout@fashionglow.com,

2

Confirm@fashionglow.com, customercare@fashionglow.com,

Info@fashionglow.com, Julie@fashionglow.com,

Jella@fashionglow.com, legal@fashionglow.com,

melanie@fashionglow.com, Service@fashionglow.com,

Status@fashionglow.com, Returns@fashionglow.com,

Wholesale@fashionglow.com, WholesaleAccounts@fashionglow.com,

SophiaA@fashionglow.com, ShopChic@fashionglow.com, and

personalshoper@attwireless.blackberry.net.  Most, if not all, of

these electronic mail addresses were forwarded to INGRID DINA

LEVY'S primary electronic mail account (PersonalShoper@aol.com).

This account, which was paid for by INGRID DINA LEVY, is provided

by AOL LLC, 22000 AOL Way, Dulles, VA 20166, which is located in

the Eastern District of Virginia.

    5.    A woman named AF, a resident of the Eastern District of

Virginia at all times relevant to this Indictment, agreed to be

the business partner of the defendant.  In actuality, AF became a

victim of the defendant's fraudulent scheme.

    6.    WWW.RUNWAYRENEGADE.COM was an Internet website

advertising designer clothing for wholesale purchase, but which

did not directly allow clothing sales.  The site was set up by AF

using instructions provided by the defendant.

    7.    WWW.BUBBLEPOPSHOP.COM was an Internet website offering

designer clothing for retail purchase.  This site was opened by

AF in coordination with the defendant, and was operated jointly.

WWW.BUBBLEPOPSHOP.COM employed a business address of 43053

Pemberton Square Ste 120 No. 134, South Riding, VA 20152, which
is a mailbox at a company called "Post Land," located in the
Eastern District of Virginia.

II.  THE SCHEME AND ARTIFICE TO DEFRAUD

8.  From on or about November 2004 and continuing through
on or about late 2005, in the Eastern District of Virginia, and
elsewhere, the defendant, INGRID DINA LEVY, devised and intended
to devise a scheme and artifice to defraud individuals by either
failing to deliver all fashion clothing items they ordered or
failing to deliver any items at all and to obtain from these
individuals money and property by means of materially false and
fraudulent pretenses and representations.

A.  WWW.RUNWAYRENEGADE.COM

9.  In late 2004, AF, a resident of the Eastern District of
Virginia, contacted the defendant, INGRID DINA LEVY, because she
was looking to start an online fashion clothing business.  The
defendant agreed to supply AF with clothing for her online
business.  AF subsequently started WWW.RUNWAYRENEGADE.COM
following instructions from the defendant.

10.  It was part of the scheme and artifice to defraud that
the defendant purported to be the owner of two high fashion
retail stores, which were located in New York and Florida, that
sold high fashion clothing items.  In fact, the defendant sent AF
pictures that purported to be her store in New York.  The
defendant, however, did not own brick and mortar clothing stores

4

in either New York or Florida at that time.

11.   It was part of the scheme and artifice to defraud that the defendant claimed to AF that she often had excess inventory from her purported retail stores purchased from legitimate suppliers that she needed to sell.  The defendant told AF that the legitimate manufacturers had minimum order amounts that she had to fulfill in order to remain an authorized distributor.  The defendant, however, was not an authorized distributor or re-seller of any of the fashion lines that she purported to sell.

12.   It was part of the scheme and artifice to defraud that the defendant purported to have vast array of employees in her retail and online businesses including the names and electronic mail addresses identified in Paragraphs 3 and 4 of Count 1 above. The defendant herself pretended to be many different individuals and shielded her identity from those whom she hoped to defraud.

13.   WWW.RUNWAYRENEGADE.COM received dozens of electronic orders from customers, usually by means of electronic mail to runwayrenegade@aol.com.  AF would collect either a check, money order, or wire transfer from the customer for their purchase; would e-mail these orders to the defendant; and would mail the defendant a check or money order for the amounts agreed to with the defendant for the merchandise and shipping.  Then, the defendant agreed she would dropship the ordered items directly to the customer.  It was part of the scheme and artifice to defraud that the defendant would often make partial shipments or ship

5

alternate goods that were not ordered so that she would be able to claim that the order had been shipped.

14.   It was part of the scheme and artifice to defraud that the defendant, on those shipments that she did make, used a return address of AF's post office box or residence, both locations within the Eastern District of Virginia.

15.   On or about December 22, 2004, CP and CG of Florida placed an order with AF for 200 "Juicy Girls Designer Products" with a sales price of $10,000.  A wire transfer for the full $10,000 was made by CP to AF's bank account located in the Eastern District of Virginia.  On or about December 27, 2004, AF mailed from the Eastern District of Virginia by the United States Postal Service or by an interstate commercial carrier a BB&T "Official check" payable to "DINA LEV" for $8,000 to the defendant's then-residence on McDonald Ave, in Brooklyn, New York.   The $8,000 check was deposited into the defendant's HSBC bank account in Brooklyn, New York on December 28, 2004.

16.   When customers CP and CG did not receive their order from the defendant, they complained to AF through a number of e-mails.  AF then consulted with the defendant about the order.  As part of the defendant's scheme, the defendant offered to deal directly with the customers in a January 25, 2005 e-mail transmitted from her Blackberry account, passed through RIM's servers in Ontario, Canada, and ended up in an AOL e-mail account on a server located in the Eastern District of Virginia.

6

17.  After a number of additional complaints from customers of WWW.RUNWAYRENEGADE.COM of counterfeit goods and non-delivery, AF again confronted the defendant.  It was part of the scheme and artifice to defraud that the defendant assured AF that, since the defendant purchased the items directly from the manufacturers themselves, they could not possibly be counterfeits, and also that all shipments to the customers had been made.

18.  It was part of the scheme and artifice to defraud that the defendant sent tracking numbers to AF by e-mail for the complaining non-delivery customers.  The defendant encouraged AF to submit these numbers to customers to address their complaints. AF discovered that many of the tracking numbers the defendant had provided her were not working or involved unrelated deliveries.

19.  Eventually, the defendant and AF agreed that the defendant would satisfy the demands of the complaining WWW.RUNWAYRENEGADE.COM customers directly, utilizing AF's online identity.  To this end, AF provided the defendant with full access to her electronic mail accounts.

20.  There were at least five WWW.RUNWAYRENEGADE.COM customers who were never given refunds and did not receive their ordered merchandise.  These unfulfilled orders totaled approximately $32,652.37.  As part of the scheme to defraud, the defendant made false representations to AF that all customer complaints regarding WWW.RUNWAYRENEGADE.COM had been fully satisfied.

7

B.    WWW.BUBBLEPOPSHOP.COM

21.    Not knowing that the defendant had misled her about the status of the remaining WWW.RUNWAYRENEGADE.COM customers, AF agreed with the defendant to open a new web-based retail fashion clothing business called WWW.BUBBLEPOPSHOP.COM.

22.    The WWW.BUBBLEPOPSHOP.COM website was opened by AF in coordination with the defendant.    WWW.BUBBLEPOPSHOP.COM employed a business address of 43053 Pemberton Square Ste 120 No. 134, South Riding, VA 20152, which is a mailbox at a company called "Post Land," located in the Eastern District of Virginia.    The defendant and AF jointly opened a Bank of America account to which they both had signature authority.    After conferring with the defendant, AF arranged for the website to accept credit card purchases.    Money from credit card sales was deposited directly into the joint Bank of America account for the business.    AF would consolidate the details of orders and e-mail them to the defendant for fulfillment.    As part of the scheme and artifice to defraud, the defendant paid herself approximately $4,045.00 with checks from the Bank of America account.

23.    After the WWW.BUBBLEPOPSHOP.COM website received approximately 30 to 40 online orders in the initial two months, every single customer of WWW.BUBBLEPOPSHOP.COM demanded a refund from their credit card company (called "chargebacks" because they are charged back from the seller's bank account) due to non-delivery.    When all the funds had been depleted from the Bank of

8

America account, the credit card processing company drew the remainder from AF's boyfriend's merchant account associated with an unrelated business, which was linked by the credit card processor to the WWW.BUBBLEPOPSHOP.COM account.

24.   When confronted by AF about the chargebacks, the depletion of the Bank of America Account, and the approximately $5,500 in losses that AF had covered, the defendant claimed to AF that all the individual purchasers were trying to avoid payment for the clothing that she had shipped and they had received.

25.   It was part of the scheme and artifice to defraud that the defendant never fulfilled the orders of the WWW.BUBBLEPOPSHOP.COM customers, never paid back AF any of the approximately $4,045 that the defendant had taken out of the joint banking account, nor did the defendant pay back any of the approximately $5,500 in additional WWW.BUBBLEPOPSHOP.COM losses.

III.   THE USE OF WIRE IN INTERSTATE AND FOREIGN COMMERCE

26.   On or about January 25, 2005, in the Eastern District of Virginia, and elsewhere, the defendant INGRID DINA LEVY, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly transmit by wire in interstate and foreign commerce an electronic mail from her Blackberry electronic mail account to an AOL electronic mail account.

(All in violation of Title 18, United States Code, Section 1343).

9

## Count 2

### (Mail Fraud)

THE GRAND JURY FURTHER CHARGES:

1.    Paragraphs 1 through 25 of Count 1 are hereby realleged and incorporated as though set forth in full herein, as constituting and describing defendant's scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses and representations.

2.    On or about December 27, 2004, in the Eastern District of Virginia, and elsewhere, the defendant INGRID DINA LEVY, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly cause to be placed in an authorized depository for mail to be delivered by the United States Postal Service or by an interstate commercial carrier, according to the directions thereon, an envelope addressed to the defendant's then-residence on McDonald Avenue in Brooklyn, New York, which envelope contained a BB&T "Official check" payable to "DINA LEV" for $8,000.00.

(All in violation of Title 18, United States Code, Sections 1341 and 2(b)).

10

## Count 3

(Interstate Transportation of Securities Taken by Fraud)

THE GRAND JURY FURTHER CHARGES:

1.     Paragraphs 1 through 25 of Count 1 are hereby realleged and incorporated as though set forth in full herein, as constituting and describing defendant's scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses and representations.

2.     On or about December 27, 2004, in the Eastern District of Virginia, and elsewhere, the defendant, INGRID DINA LEVY, did unlawfully cause the transport and transfer in interstate commerce from the State of Virginia to the State of New York, securities, that is, a BB&T "Official check" in the amount of $8,000 payable to "Dina Lev", the value of which was five thousand dollars ($5,000) or more, knowing the same to have been taken by fraud.

(All in violation of Title 18, United States Code, Sections 2314 and 2(b)).

11

Count 4

(Wire Fraud)

THE GRAND JURY FURTHER CHARGES:

1.   Paragraphs 1 through 4 of Count 1 are hereby realleged and incorporated as though set forth in full herein.

I.   INTRODUCTION

2.   WWW.SHOPCHIC.NET was an Internet website offering fashion items for sale.  This site was operated solely by the defendant INGRID DINA LEVY.

3.   WWW.SHOPLILIE.COM was an Internet website offering fashion items for sale.  This site was operated solely by the defendant.

4.   WWW.FASHIONGLOW.COM was an Internet website offering fashion items for sale.  This site was operated solely by the defendant.

II.   THE SCHEME AND ARTIFICE TO DEFRAUD

5.   From on or about January 2005 and continuing through on or about late 2006, in the Eastern District of Virginia, and elsewhere, the defendant, INGRID DINA LEVY, devised and intended to devise a scheme and artifice to defraud individuals by either failing to deliver all fashion clothing items they ordered or failing to deliver any items at all and to obtain from these individuals money and property by means of materially false and fraudulent pretenses and representations.

6.   As part of the scheme to defraud, the defendant opened

12

a number of associated Internet websites and identities that
purported to sell fashion clothing items, including, but not
limited to, WWW.SHOPCHIC.NET, WWW.SHOPLILIE.COM, and
WWW.FASHIONGLOW.COM.

7. As part of the scheme and artifice to defraud, the
defendant registered the domain name WWW.SHOPCHIC.NET with Yahoo,
Inc. on January 10, 2005. The defendant registered the contact
information for the name as SHOP CHIC, 8721 Santa Monica
Boulevard, Number 1058, Los Angeles, California, 90069. This
address actually belongs to the mailbox company "Mail Service
Center," and Mailbox "Number 1058" was rented by the defendant as
part of the scheme to defraud. Two phone numbers were also
listed in the registration information: one with a Los Angeles
area code (310) and the other with a toll free exchange (866).
Both of these telephone numbers were associated with the
defendant, and voicemails from each were forwarded to
personalshoper@aol.com, which was associated with a mail server
in the Eastern District of Virginia.

8. As part of the scheme and artifice to defraud, the
defendant instructed "Mail Service Center" in Los Angeles to
forward any mail received in rented box via United Parcel Service
2nd Day Air to her residences in New York: in an e-mail sent by
the defendant from an AOL computer server in the Eastern District
of Virginia on June 30, 2006 that passed through a server in Hong
Kong, and was accessed on a computer in Los Angeles, California,

13

the defendant provided "Gio" at "Mail Service Center" her new residence address in Neponsit, New York.

9.   On or about December 28, 2005, an undercover agent for government placed an Internet order for twelve (12) track suits from WWW.SHOPCHIC.NET.  On or about January 9, 2006, pursuant to instructions from the defendant, the undercover agent mailed a bank check from the Eastern District of Virginia in the amount of $1,020.00 as payment for the twelve track suits to 8721 Santa Monica Boulevard, Number 1058, Los Angeles, California 90069. Receipt of the check was confirmed via e-mail received from WHOLESALE@SHOPCHIC.NET on January 13, 2006.  The check for $1,020.00 was cashed on January 19, 2006.  On February 8, 2006, e-mail was received from WHOLESALE@SHOPCHIC.NET reporting that the order had "departed our premises".  No package, no merchandise, and no refund was ever received by the undercover agent.

10.   On or about October 31, 2005, SA of Texas placed an order with the defendant for 130 pairs of designer jeans. Pursuant to the instructions of the defendant for Order "#7-1170", SA mailed an American State Bank "Official check" in the amount of $7,980 payable to "Levy" from Texas to 8721 Santa Monica Boulevard in Los Angeles, California.  The $7,980 check was deposited into the defendant's HSBC bank account in Brooklyn, New York on November 7, 2005.  SA received 16 pairs of jeans, rather than the 130 pairs that she had ordered.  As part of the

14

defendant's scheme and artifice to defraud, SA later received multiple e-mails from the defendant stating that SA would receive "a refund for the items that were not delivered." No refund was ever provided, and the remainder of the order was never fulfilled.

11. It was part of the scheme and artifice to defraud that the defendant never satisfied the orders of dozens of customers throughout the United States and around the world and they were not given refunds. These unsatisfied orders total more than $100,000.

III.  THE USE OF WIRE IN INTERSTATE AND FOREIGN COMMERCE

12. On or about June 30, 2006, in the Eastern District of Virginia, and elsewhere, the defendant INGRID DINA LEVY, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly transmit by wire in interstate and foreign commerce an electronic mail to the electronic mail account for the "Mail Service Center" in Los Angeles, California.

(All in violation of Title 18, United States Code, Section 1343).

15

## Count 5

(Mail Fraud)

THE GRAND JURY FURTHER CHARGES:

1.     Paragraphs 1 through 11 of Count 4 are hereby realleged and incorporated as though set forth in full herein, as constituting and describing defendant's scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses and representations.

2.     On or about January 9, 2006, in the Eastern District of Virginia, and elsewhere, the defendant INGRID DINA LEVY, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly cause to be placed in an authorized depository for mail to be delivered by the United States Postal Service an envelope addressed to 8721 Santa Monica Boulevard #1058, Los Angeles, California 90069-4507, which envelope contained a check payable to "LEVY" for $1,020.00.


(All in violation of Title 18, United States Code, Sections 1341 and 2(b)).

16

## Count 6

(Interstate Transportation of Securities Taken by Fraud)

THE GRAND JURY FURTHER CHARGES:

1.    Paragraphs 1 through 11 of Count 4 are hereby realleged and incorporated as though set forth in full herein, as constituting and describing defendant's scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses and representations.

2.    On or about October 31, 2005, in the Eastern District of Virginia, and elsewhere, the defendant, INGRID DINA LEVY, did unlawfully cause the transport and transfer in interstate commerce from the State of Texas to the State of New York, securities, that is, an American State Bank "Official check" in the amount of $7,980 payable to "Levy", the value of which was five thousand dollars ($5,000) or more, knowing the same to have been taken by fraud.

(All in violation of Title 18, United States Code, Sections 2314 and 2(b)).

17

## FORFEITURE

1.    Pursuant to Rule 32.2(a), the defendant INGRID DINA
LEVY is hereby notified that, if convicted of any of the mail
fraud, wire fraud, or interstate transportation of securities
taken by fraud offenses charged in Counts One through Six above,
she shall forfeit to the United States, pursuant to 18 U.S.C. §
981(a)(1)(C) and 28 U.S.C. § 2461(c), the following property:

> (a)   A sum of money equal to at least $134,412.53 in
> United States currency, representing the amount of
> proceeds obtained as a result of the violation of 18
> U.S.C. §§ 1341, 1343, and 2314.

> (b)   Pursuant to 21 U.S.C. § 853(p), as incorporated by
> 28 U.S.C. § 2461(c), the defendant shall forfeit
> substitute property, up to the value of the amount
> described in subparagraph (a), if, by any act or
> omission of the defendant, the property described in
> subparagraph (a), or any portion thereof, cannot be
> located upon the exercise of due diligence; has been
> transferred, sold to, or deposited with a third party;
> has been placed beyond the jurisdiction of the Court;
> has been substantially diminished in value; or has been
> commingled with other property which cannot be divided
> without difficulty.   The property subject to forfeiture
> as substitute assets includes, but is not limited to,
> the following:

(1) $50,024.43 provided by the defendant in the form of a bank check payable to "MOBILE 5000" on May 5, 2006.

(In accordance with Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 2461(c); and Rule 32.2(a), Federal Rules of Criminal Procedure.)

A TRUE BILL:

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

_____

FOREPERSON OF THE GRAND JURY

DATE: June _____, 2007

CHUCK ROSENBERG
United States Attorney

_____

Jay V. Prabhu
Special Assistant United States Attorney

19