IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:07 CR 265 |
| | ) | |
| INGRID DINA LEVY, | ) | Hon. James C. Cacheris |
| | ) | |
| | ) | <u>Sentencing:</u> May 29, 2008 |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING FACTORS**

COMES NOW, the United States of America, through its attorneys, Chuck Rosenberg, United States Attorney, and Jay V. Prabhu, Assistant United States Attorney, and in accord with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, *Guidelines Manual,* §2B1.1 (Nov. 2007), files this Position of the United States with Respect to Sentencing Factors of INGRID DINA LEVY. The United States disagrees with the Presentence Report in that it believes that, during the trial, sufficient evidence was offered that the offense involved more than 50 victims; the government provides herein additional evidence for the Court's consideration. With the additional two points from Section 2B1.1(b)(2)(B) for more than 50 victims, the defendant's offense level becomes 23. With that change, the United States believes that the Sentencing Guidelines establish a reasonable sentencing range of 46-57 months that appropriately accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

**I.     BACKGROUND and the PRESENTENCE REPORT**

As the Court is aware and as detailed in the Presentence Report, on February 25, 2008, following a three day jury trial, the defendant, Ingrid Dina Levy, was convicted of three counts of mail fraud in violation of Title 18, United States Code, Section 1341 and four counts of wire fraud in violation of Title 18, United States Code, Section 1343. The defendant had operated a number of online fashion clothing "businesses" that failed to deliver the clothing ordered by its customers or refund their money. The evidence in the case showed that the defendant, through an elaborate scheme of lies, misrepresentations, and technological efforts, endeavored to defraud her customers and then defeat their attempts to recover their property.

Based on this record, the Presentence Report calculated that the Adjusted Offense Level for the defendant's conduct was 21: Sentencing Guideline 2B1.1(a)(1) provides for an offense level of 7 for Mail and Wire Fraud; Guideline 2B1.1(b)(1)(F) provides an additional ten level upward adjustment for an offense with a loss amount greater than $120,000, but less than $200,000; Guideline 2B1.1(b)(2)(A)(I) provides an additional two-level upward adjustment for an offense involving 10 or more victims; and Guideline 2B1.1(b)(9)(C) provides a two-level upward adjustment for an offense that involved sophisticated means. The Presentence Report further calculates that the defendant has a Criminal History Category of I and an Offense Level Total of 21. With the notable exception of the two-level adjustment for 10 victims, the Government agrees with the calculations of the Presentence Report.

The United States respectfully submits to the Court that the evidence at trial showed that many more than the 46 specifically listed victims were harmed by the defendant's conduct. In fact, attached to this motion is a spreadsheet showing that there were 83 victims who complained

about the defendant's conduct to the Internet Crime Complaint Center and claim $169,274 in losses. The underlying IC3 documents for this chart had been provided to the defendant's counsel in discovery for trial (a copy of these documents will be provided to the Court by hand). The smaller group of 46 victims contained in Government's Exhibit 30 (a copy of which is attached to this filing) had been individuals whose payments were seen in the known bank accounts of the defendant. The remaining 37 victims claim that they were also victimized by the defendant but the government was unable to track the money to the known defendant's bank accounts. It is notable that these 83 victims are only the victims who contacted the government to complain, rather than the entirety of people who were victimized by the defendant. The government would submit that there is more than sufficient evidence for the Court to conclude that there were more than 50 victims of the defendant's conduct; therefore, a four-point upward adjustment is appropriate in this case under Guideline 2B1.1(b)(2)(B).

With the additional two points under Guideline 2B1.1(b)(2) for more than 50 victims (rather than more than 10 victims), the defendant's offense level would be properly calculated as 23. With the Defendant's Criminal History Category of I, the advisory Sentencing Guidelines range for the Defendant is properly calculated as 46-57 months.

## II. ARGUMENT

### A. A Sentence Within the Sentencing Guidelines Would Be Reasonable and Appropriate in Light of Recent Supreme Court Rulings

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 128 S. Ct. 586, 596 (2007). As will be discussed later, the Sentencing

Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

The government's recommendation of a within-guideline sentence is based in part on the fact that such a sentence properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing. While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," Kimbrough v. United States, 128 S. Ct. 558, 574 (2007), it remains the case that "the Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with

appropriate expertise,'" id. at 574 (quoting United States v. Pruitt, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)).

Thus, the Supreme Court recently stated: "We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." Kimbrough, 128 S. Ct. at 574 (quoting Rita v. United States, 127 S. Ct. 2456, 2465 (2007)).

In Rita, the Supreme Court held that an appellate court may presume that a within-guideline sentence is reasonable. While this presumption does not apply before the district court, Rita, 127 S. Ct. at 2465, the Supreme Court's observation is informative that "the presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one." Id. at 2463 (emphasis in original).

Further, the advisory guidelines are the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." Gall, 128 S. Ct. at 596 n.6.

As is evident from the discussion above, these Gall and Kimbrough reaffirmed the importance of consideration of the guidelines by district courts, along with all other 3553(a) considerations. Gall was actually focused on the scope of appellate review: the Supreme Court held that appellate courts must review sentences deferentially, under an abuse of discretion standard, whether such sentences are within or outside the advisory ranges. While this ruling may result in more frequent affirmance of district court decisions, it does not relieve the district courts of their primary responsibility, as explained in the Supreme Court decisions, to properly assess and consider all sentencing factors, including the advisory guideline range, and to give careful consideration to that range.

Thus, the Gall Court instructed:

> It is also clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications. For even though the Guidelines are advisory rather than mandatory, they are, as we pointed out in Rita, the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.

Gall, 128 S. Ct. at 594. [1]

Likewise, the Court's decision in Kimbrough, issued on the same day as Gall, emphasized the district courts' responsibility to consider the Sentencing Guidelines as a bulwark against disparate sentencing. In Kimbrough, the Court held that the guidelines for crack cocaine offenses are advisory, and that a sentencing court in such a case may consider, among other

---

[1] The Court added: "If [the judge] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one." Id. at 597.

6

factors, the criticism stated by the Sentencing Commission and others of those particular guidelines. Responding to an assertion that such case-by-case assessment of the propriety of the guidelines may lead to significant disparity in sentencing, the Court emphasized the district courts' responsibility to avoid that result:

> Section 3553(a)(6) directs *district courts* to consider the need to avoid unwarranted disparities — along with other § 3553(a) factors — when imposing sentences. See *Gall, ante* . . . .

Kimbrough, 128 S. Ct. at 574 (emphasis in original).

Further, Kimbrough did not encourage wholesale abandonment of guideline sentencing. To the contrary, Kimbrough narrowly focused on sentencing for crack cocaine offenses. With respect to those offenses alone, the Court suggested that the guidelines are not entitled to the ordinary respect given to the Sentencing Guidelines on the basis of the care and study put into them, given that the Sentencing Commission itself has condemned its own guidelines in this area. Regarding any other offenses, the Supreme Court suggested that rejection of the suggested guidelines based only on an individual judge's disagreement with the formulation of the guidelines may not fare well on appeal, stating: "while the Guidelines are no longer binding, closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range 'fails properly to reflect §3553(a) considerations' even in a mine-run case." Id. at 575 (quoting Rita, 127 S. Ct. at 2465). These statements reflect the fact that, ordinarily, the Sentencing Guidelines reflect the distillation of national sentencing

experience and provide a useful measure for determining appropriate and consistent punishments.

For all of these reasons, the advisory guideline range deserves significant respect. To be clear, the government recognizes that the guidelines are entirely advisory, and that a district court has discretion to vary from an advisory range, subject only to deferential appellate review for reasonableness. However, a district court must consider the guideline range, see § 3553(a)(4), and is usually well advised to follow the Sentencing Commission's advice, in order to assure fair, proportionate, and uniform sentencing of criminal offenders.

      B.      <u>A Sentence within the Guidelines Range Is Appropriate And Reasonable In Light Of the Serious Nature Of Defendant's Criminal Conduct.</u>

There can be no question that the defendant engaged in serious crimes that harmed individuals and businesses (particularly startup fashion clothing businesses). Given the nature of the defendant's criminal conduct and the impact and the harm to the public, the United States believes that a significant sentence of incarceration within the range of the Sentencing Guidelines would account reasonably for the seriousness of her crimes and provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A).

      C.      <u>A Sentence within the Guidelines Range Is Necessary for Both General and Specific Deterrence</u>

The defendant has not shown any remorse for her conduct and, in fact, has continued to deny responsibility for the fraudulent scheme. <u>See</u> PSR ¶ 24. It is the government's position that a significant period of incarceration is much more likely to deter the defendant from further

criminal conduct.  Additionally, as the defendant's conduct has shown, the opportunity to commit fraud on a massive and multinational scale is significant in the Internet Age.  A significant period of incarceration is absolutely necessary to ensure accountability for people's actions on the Internet.   The sentence of the Court will be a significant message to others who might emulate the defendant's criminal conduct, and a significant departure would certainly harm general deterrence.

IV. CONCLUSION

The United States believes that the Sentencing Guidelines establish a reasonable sentencing range of 46-57 months that appropriately accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Chuck Rosenberg
United States Attorney

By: _____/s/_____
Jay V. Prabhu
Attorney for the United States of America
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave
Alexandria, VA 22314
Phone: 703-299-3700
Fax: 703-299-3981
Jay.Prabhu@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of May, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF, which will then send a notification of such filing (NEF) to the following:

Steven D. Brown
Sarah E. Moffett
LeCLAIR RYAN, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
P.O. Box 2499
Richmond, Virginia 23218-2499
Telephone: (804) 783-7516
Fax: (804) 783-7616

Steven.Brown@leclairryan.com
Sarah.Moffett@leclairryan.com

*Counsel for Ingrid Dina Levy*

This filing will be submitted by other means to the following:

Jennifer D. Lyerly
U.S. Probation Officer
(703) 366-2100

                                                      /s/
                                      Jay V. Prabhu
                                      Attorney for United States
                                      U.S. Attorney's Office
                                      Justin W. Williams U.S. Attorney's Building
                                      2100 Jamieson Avenue
                                      Alexandria, Virginia 22314
                                      Phone: 703-299-3700
                                      FAX: 703-299-3981
                                      Email Address: jay.prabhu@usdoj.gov