**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

_____

|  |  |  |
|---|---|---|
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:07-cr-00265 (JCC)** |
| | ) | |
| **INGRID D. LEVY,** | ) | **The Hon. James C. Cacheris** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

_____

### INGRID LEVY'S MOTION FOR BOND PENDING APPEAL

Ingrid Levy, through undersigned counsel, filed her brief on appeal to the United States Court of Appeals for the Fourth Circuit on November 12, 2008. In light of the legal arguments made in that brief (attached hereto as Exhibit 1) and the circumstances described in the Affidavit of Counsel (attached hereto as Exhibit 2), Mrs. Levy renews the request that was made on her behalf following her trial that this Court release her on bond pending appeal pursuant to 18 U.S.C. § 3143.  The reasons warranting such relief are set forth below.

### A. History of this Case

After a jury trial in this Court, Mrs. Levy was convicted on three counts of mail fraud and four counts of wire fraud.  18 U.S.C. §§ 1341, 1343. On June 12, 2008, following a presentation by the prosecution that led this Court to conclude that her Sentencing Guidelines level should be increased because the Court concluded that the "loss" was $168,300.77 and that there were 82 victims, this Court sentenced Mrs. Levy to 46 months in prison and directed her to pay $168,000.07 in restitution.  Ms. Levy was ordered to surrender voluntarily to the Bureau of Prisons ("BOP"). She did so on October 27, 2008.

## B. The Statutory Language

The governing statute, 18 U.S.C. § 3143 (b) (1), directs a sentencing court to:

> [O]rder that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal … be detained, unless the judicial officer finds –
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142 (b) or (c) of this title and;
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –
>
> > (i) reversal,
> > (ii) an order for a new trial,
> > (iii) a sentence that does not include a term of imprisonment,
> > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

## C. No Risk of Flight

There can be little doubt that Mrs. Levy is not likely to flee. During the lengthy period between the first arraignment in this case and sentencing, a period of almost eleven months, Mrs. Levy abided by all the conditions of her release. She was not committed to custody before, during, or even after the trial in this matter. She met every scheduled court appearance and never demonstrated any intention or likelihood of fleeing. She complied with the terms of her sentence and self-surrendered to the BOP at Danbury, as ordered, on October 27, 2008.

In addition to Mrs. Levy's exemplary conduct throughout the course of the criminal proceedings, her ties to the community are demonstrated by her critical role as the primary caregiver for her three young children: DL, SL, and DL, all American citizens and residents of New York. Mrs. Levy's children, who range in age from two to nine, relied completely on their

mother for daily care and upbringing, as their father works long hours to support the family and Mrs. Levy stayed home with the children since they were born.

Mrs. Levy's oldest son, DL, has a learning disability known as Auditory Processing Disorder (APD). APD is a disability that requires a stable, attentive, and consistent home environment so that DL may receive the proper treatment and support to limit the potentially devastating effects of the disability. DL's APD treatment requires daily meetings with a therapist, instructional therapy sessions for the primary caregiver, regularly scheduled meetings with the Board of Education, additional tutors, and diligent attention to maintaining consistency and order within DL's home and social life. For the past seven years until she surrendered to serve her sentence, Mrs. Levy was the sole caregiver and parent to attend the daily therapy sessions, receive the proper training for such particularized care-giving, and maintain the rigorous schedule for DL's treatment. The slightest disturbance in DL's schedule and home environment causes anxiety and behavior regressions. Clearly, Mrs. Levy's dedication to her children and their well-being are compelling evidence that she does not pose a risk of flight.

The Government has, in the past, contended that there is some risk of flight because Mrs. Levy is a French citizen and has ties in France. Her husband and children, however, are American citizens and are firmly rooted in this country. Moreover, Mrs. Levy herself was in the final stage of taking the oath of citizenship and becoming a United States citizen when these charges were filed. As a result of these allegations her citizenship oath ceremony was deferred. Given her strong ties to her family and her demonstrated compliance with all conditions of release imposed upon her, there is no danger whatever that she will leave the United States.

**D. No Threat to the Community**

Mrs. Levy plainly poses no threat to the safety of any other person or to the community at large. Mrs. Levy has no prior criminal history. Neither the Government nor this Court ever had a reason to believe that she posed a danger to anyone. In fact, quite the contrary, due to Mrs. Levy's former career as a community piano instructor, her current involvement in the Parent Teacher Association ("PTA"), her Synagogue, and the general religious community, those around her could only view her as a kind and giving member of the community.

The crimes for which Mrs. Levy was convicted are not dangerous in nature. Nor has she exhibited conduct that could be characterized as dangerous. Thus, there is clear and convincing evidence that Mrs. Levy does not pose a danger to another person or to the community at large if she is granted bond pending her appeal.

**E. Mrs. Levy's Current Status and Condition**

The Affidavit of Todd Bussert, Esq., attached to this Motion as Exhibit 2, describes the extraordinarily difficult conditions under which Mrs. Levy is serving her term of imprisonment. Although the Court's Judgment Order recommended that she "be designated to a minimum security facility" and she is, under the BOP's *Designation Manual* "at the bottom of the Security Designation Table" and "qualifies for minimum security placement," her classification as a "deportable alien" has resulted in her assignment to the Danbury Federal Correctional Institution ("FCI Danbury"), rather than to Federal Prison Camp at Danbury. Paragraphs 9(a) and 9(d) of Exhibit 2 describes the conditions that distinguish FCI Danbury from the Danbury Prison Camp.

The Court has seen Mrs. Levy, so it is not necessary to describe further the difficulties she, as a petite young woman (5'4" and 98 pounds) might encounter in FCI Danbury, where, as Exhibit 2 declares, she is "more apt to be housed with serious and/or violent offenders."

In addition, as Exhibit 2 demonstrates, Mrs. Levy is currently unable to communicate by monitored electronic mail with her family and with her attorneys. The Court is also aware from representations made at trial and in applications to this Court that Mrs. Levy is an observant Orthodox Jew with significant religious dietary restrictions. Because she observes a kosher diet, the hardship she endures while incarcerated and able to subsist only on very limited foods is substantially greater than the deprivations otherwise associated with imprisonment.

### F. The appeal raises substantial legal issues

This leaves for resolution the criteria of Section 3143(b)(1)(B). The Fourth Circuit said in *United States v. Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991) (citing *United States v. Miller*, 753 F.2d 19 (3d Cir. 1985)). that a District Court must "[m]ake two inquiries after finding that the appeal is not taken for the purpose of delay. First, whether the question presented on appeal is a 'substantial' one. Second, if decided in favor of the accused, whether the substantial question is important enough to warrant reversal or a new trial on all counts for which [this Court] imprisoned the defendant."

In its *Steinhorn* opinion, the Fourth Circuit defined a "substantial question" as "a 'close' question or one that very well could be decided the other way." This does not mean that it is more probable than not that its decision will be reversed on appeal. *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987). Indeed, in *Steinhorn* the Fourth Circuit reversed a trial court's denial of a defendant's motion for release pending appeal on a finding that at least one of the issues raised on appeal was a "substantial" one, namely, that the "court erred in denying a jury instruction on entrapment." *Id.* at 196. The Fourth Circuit concluded that the appellant's "assignment of error to the court's refusal to instruct on entrapment presents a close question that could be decided either way." *Id.* The *Steinhorn* decision has been reaffirmed by the Fourth

Circuit in a number of unpublished decisions. *United States v. Giannone*, 280 Fed. Appx. 247 (4th Cir. 2008); *United States v. Beckley*, 136 Fed. Appx. 555 (4th Cir. 2005); *United States v. Harris*, 82 F.3d 411 (4th Cir. 1996); *United States v. Dietz*, 51 F.3d 269 (4th Cir. 1995). *See also United States v. Randell,* 761 F.2d 122, 125 (2d Cir. 1985)(holding that "likely to result" in § 3143 means "if that substantial question is determined favorably to defendant, that decision is likely to result in reversal or an order for a new trial"). *United States v. Valera-Elizondo*, 761 F.2d 1020, 1025 (5th Cir. 1985).

As Mrs. Levy's brief on appeal demonstrates, her appeal presents several "substantial questions" within the meaning of the Fourth Circuit's *Steinhorn* decision.

**(a) Erroneous application of Sentencing Guidelines as mandatory --** This Court's statement that it was "bound" to impose a Sentencing Guidelines decision and was not "allowed" to depart downwards conflicts with the Supreme Court's decision in *Booker* rendering the Guidelines advisory. *United States v. Booker*, 534 U.S. 220 (2005). In *Gall v. United States*, 128 S. Ct. 586, 596 (2007), the Court reiterated that in the District Court, the Guidelines should be merely "the starting point" and "not the only consideration" in determining an appropriate sentence. In addition, the District Court may not presume that a Guidelines sentence is reasonable. *Id.* at 596-97. *See* Exhibit 1 at pp. 38-39. There is a very substantial likelihood, therefore, that this Court's sentence will be vacated by the Court of Appeals for the Fourth Circuit.

**(b) Admission of prejudicial charts based on non-evidentiary hearsay --** The trial of Mrs. Levy was rendered unfair and is likely to be reversed by the Court of Appeals because the prosecution offered into evidence over defense objection several Bar Graphs and charts that were highly prejudicial and were based on unreliable hearsay. See Exhibit 1 at pp. 23-34. Defense

counsel was provided with the Bar Graphs on the day that they were presented in open court, and the underlying evidence was not in the trial record or made available in time for counsel's review under Federal Rule of Evidence 1006. The charts and summaries also concerned factual matters that were peripheral or irrelevant to the charges in the Superseding Indictment. They probably had a substantial impact on the jury and led it to believe erroneously (a) that Mrs. Levy cheated her partner, Ms. Foster, and (b) that she failed to make purchases to fill her customers' orders.

**(c) Inadequate jury instruction on "intent to defraud" --** Although the only factual issue at Mrs. Levy's trial was whether she operated her business with intent to defraud or whether she was simply incapable of managing her business in an orderly way but acted in good faith, this Court's instructions to the jury inadequately defined the intent that the prosecution had to prove to justify a guilty verdict. Exhibit 1, pp. 34-37.

**(d) Erroneous calculation of "loss" and number of victims --** This Court's Sentencing Guidelines calculation of the "loss" and of the number of victims was erroneous because the Court based those determinations on hearsay that was not reliable. The FBI Agent who testified at the sentencing hearing relied for his conclusions entirely on what had been posted on the Internet Crime Complaint Center. The Center's information was based on the unilateral reports of individuals whose allegations were never verified and whose true identities were not established. There was no way of knowing whether the posted complaint had been resolved with late delivery of goods or with a refund – or even whether the complainant truly existed and his or her recitation of facts was truthful. On this account, the Court's Guidelines calculation was erroneous.

### G. Personal Family Circumstances

Mrs. Levy should be released on bond pending the outcome of her appeal because the appellate issues are substantial. Mrs. Levy's service of her sentence at FCI Danbury rather than at Danbury Prison Camp was not, we submit, the Court's expectation when he sentenced Mrs. Levy. For someone who has spent nearly all her life in a warm home environment, the adjustment to FCI Danbury is particularly severe. And the separation from her children has been traumatic for her and for them.

For some unexplained reason, the Probation Officer in this District who prepared the Pre-Sentence Investigation Report in Mrs. Levy's case did not contact either (1) Mrs. Levy's brother who resides in Florida or (2) Pre-trial Services Officer Robert Long who had been supervising Mrs. Levy in her district of residence in the period prior to and after her trial. Upon information and belief, Mr. Long would have recommended home confinement for Mrs. Levy. Mrs. Levy's brother, Mr. Gilbert Benhamou, has advised that had he been asked he would have undertaken to defray the cost of home confinement (contrary to the statement in the Pre-Sentence Investigation Report that Mrs. Levy "does not have the ability to pay the minimum fine, cost of incarceration and/or supervision" (PSR ¶ 57)). Mr. Benhamou has advised counsel that he will pay costs of any home confinement or monitoring if Mrs. Levy is released pursuant to this Motion.

We urge the Court to release her while the Fourth Circuit is considering whether to grant a new trial and whether to direct that she be re-sentenced under clarified sentencing standards.

Respectfully submitted,


COZEN O'CONNOR

_____/s/_____
Nicole L. Angarella, Esq.
Virginia Bar Number 72700
1627 I St., NW, Suite 1100
Washington, DC 20006
Phone: (202) 912-4864
Fax: (877) 260-6240
Email: nangarella@cozen.com

L. Barrett Boss
COZEN O'CONNOR
1627 I St., NW, Suite 1100
Washington, DC 20006
Phone: (202) 912-4818
Fax: (866) 413-0172
Email: bboss@cozen.com

Nathan Lewin
LEWIN & LEWIN
1828 L St., NW, Suite 901
Washington, DC 20036
Phone: (202) 828-1000
Fax: (202) 828-0909
Email: nat@lewinlewin.com

*Attorneys for Defendant*

Dated:  November 17, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of November, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:


Jay V. Prabhu
Attorney for the United States
U.S. Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Fax: (703) 299-3981
Email: jay.prabhu@usdoj.gov



_____/s/_____
Nicole L. Angarella, Esq.
Virginia Bar Number 72700
1627 I St., NW, Suite 1100
Washington, DC 20006
Phone: (202) 912-4864
Fax: (877) 260-6240
Email: nangarella@cozen.com