IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL NO. 1:07 CR 265 |
| v. ) | |
| ) | Hon. James C. Cacheris |
| INGRID DINA LEVY, ) | |
| ) | <u>Re-Sentencing:</u> October 23, 2009 |
| Defendant. ) | |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING FACTORS AT RE-SENTENCING**

COMES NOW, the United States of America, through its attorneys, Neil H. MacBride, United States Attorney, and Jay V. Prabhu, Assistant United States Attorney, and in accord with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, *Guidelines Manual,* §2B1.1 (Nov. 2007), files this Position of the United States with Respect to Sentencing Factors of INGRID DINA LEVY. The United States believes that the Court properly found the defendant's offense level as 23, when it originally sentenced the defendant in June 2008. Therefore, the United States believes that the advisory Sentencing Guidelines establish a reasonable sentencing range of 46-57 months that appropriately accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

**I.    BACKGROUND**

On February 25, 2008, following a three day jury trial, the defendant, INGRID DINA LEVY, was convicted of three counts of mail fraud in violation of Title 18, United States Code, Section 1341 and four counts of wire fraud in violation of Title 18, United States Code, Section 1343. The defendant had operated a number of online fashion clothing "businesses" that failed

to deliver the clothing ordered by its customers or refund their money. The evidence in the case showed that the defendant, through an elaborate scheme of lies, misrepresentations, and technological efforts, endeavored to defraud her customers and then defeat their attempts to recover their property.

Based on this record, the Presentence Report calculated that the Adjusted Offense Level for the defendant's conduct was 21: Sentencing Guideline 2B1.1(a)(1) provides for an offense level of 7 for Mail and Wire Fraud; Guideline 2B1.1(b)(1)(F) provides an additional ten level upward adjustment for an offense with a loss amount greater than $120,000, but less than $200,000; Guideline 2B1.1(b)(2)(A)(I) provides an additional two-level upward adjustment for an offense involving 10 or more victims; and Guideline 2B1.1(b)(9)(C) provides a two-level upward adjustment for an offense that involved sophisticated means. The Presentence Report further calculated that the defendant has a Criminal History Category of I and an Offense Level Total of 21.

At the original sentencing, the United States submitted evidence to the Court that the evidence at trial showed that many more than the 46 specifically listed victims were harmed by the defendant's conduct. In fact, the government submitted evidence of 83 victims. The Court credited the evidence submitted and imposed a four-point upward adjustment (as opposed to the 2 points recommended in the Presentence Report) under Guideline 2B1.1(b)(2)(B). With the additional two points, the defendant's offense level was properly calculated by the Court as 23. With the Defendant's Criminal History Category of I, the advisory Sentencing Guidelines range for the Defendant was properly calculated as 46-57 months. The Court then sentenced the defendant to 46 months of imprisonment and ordered her to pay $168,300.77 in restitution in a

final judgment issued on June 12, 2008.

On June 19, 2008, the defendant noticed her timely appeal to the Fourth Circuit challenging both her convictions and her sentence. On June 30, 2009, the Fourth Circuit affirmed the defendant's seven convictions, but vacated her sentence and remanded for re-sentencing. See United States v. Ingrid Dina Levy, No. 08-4662 (4th Cir. 2009) (unpublished). In its opinion, the appeals court noted that this Court had said that it felt "bound by these [S]entencing [G]uidelines, except to the extent that [it could] depart upwards or downwards in any given case" and expressed that "[it did not] feel that [it could] depart downwards in this case and [had] to be within the [G]uideline range." Id. at 10-11. On this basis, the Fourth Circuit ruled that this Court improperly treated the advisory Sentencing Guidelines as mandatory.

## II. ARGUMENT

### A. A Sentence Within the Sentencing Guidelines Would Be Reasonable and Appropriate in Light of Recent Supreme Court Rulings

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 128 S. Ct. 586, 596 (2007). The Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the

offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

The government's recommendation of a within-guideline sentence is based in part on the fact that such a sentence properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing. While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," Kimbrough v. United States, 128 S. Ct. 558, 574 (2007), it remains the case that "the Commission fills an important institutional role: it has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise,'" id. at 574 (quoting United States v. Pruitt, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)).

Thus, the Supreme Court recently stated: "We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." Kimbrough, 128 S. Ct. at 574 (quoting Rita v. United States, 127 S. Ct. 2456, 2465 (2007)).

In Rita, the Supreme Court held that an appellate court may presume that a within-guideline sentence is reasonable. While this presumption does not apply before the district court, Rita, 127 S. Ct. at 2465, the Supreme Court's observation is informative that "the presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one." Id. at 2463 (emphasis in original).

Further, the advisory guidelines are the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." Gall, 128 S. Ct. at 596 n.6.

As is evident from the discussion above, these Gall and Kimbrough reaffirmed the importance of consideration of the guidelines by district courts, along with all other 3553(a) considerations. Gall was actually focused on the scope of appellate review: the Supreme Court held that appellate courts must review sentences deferentially, under an abuse of discretion standard, whether such sentences are within or outside the advisory ranges. While this ruling may result in more frequent affirmance of district court decisions, it does not relieve the district

5

courts of their primary responsibility, as explained in the Supreme Court decisions, to properly assess and consider all sentencing factors, including the advisory guideline range, and to give careful consideration to that range.

Thus, the Gall Court instructed:

> It is also clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications. For even though the Guidelines are advisory rather than mandatory, they are, as we pointed out in Rita, the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.

Gall, 128 S. Ct. at 594. [1]

Likewise, the Court's decision in Kimbrough, issued on the same day as Gall, emphasized the district courts' responsibility to consider the Sentencing Guidelines as a bulwark against disparate sentencing. In Kimbrough, the Court held that the guidelines for crack cocaine offenses are advisory, and that a sentencing court in such a case may consider, among other factors, the criticism stated by the Sentencing Commission and others of those particular guidelines. Responding to an assertion that such case-by-case assessment of the propriety of the guidelines may lead to significant disparity in sentencing, the Court emphasized the district courts' responsibility to avoid that result:

> Section 3553(a)(6) directs *district courts* to consider the need to avoid unwarranted disparities — along with other § 3553(a) factors — when imposing sentences. See *Gall, ante* . . . .

---

[1] The Court added: "If [the judge] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one." Id. at 597.

Kimbrough, 128 S. Ct. at 574 (emphasis in original).

Further, Kimbrough did not encourage wholesale abandonment of guideline sentencing. To the contrary, Kimbrough narrowly focused on sentencing for crack cocaine offenses. With respect to those offenses alone, the Court suggested that the guidelines are not entitled to the ordinary respect given to the Sentencing Guidelines on the basis of the care and study put into them, given that the Sentencing Commission itself has condemned its own guidelines in this area. Regarding any other offenses, the Supreme Court suggested that rejection of the suggested guidelines based only on an individual judge's disagreement with the formulation of the guidelines may not fare well on appeal, stating: "while the Guidelines are no longer binding, closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range 'fails properly to reflect §3553(a) considerations' even in a mine-run case." Id. at 575 (quoting Rita, 127 S. Ct. at 2465). These statements reflect the fact that, ordinarily, the Sentencing Guidelines reflect the distillation of national sentencing experience and provide a useful measure for determining appropriate and consistent punishments.

For all of these reasons, the advisory guideline range deserves significant respect. To be clear, the government recognizes that the guidelines are entirely advisory (as the Fourth Circuit noted in remanding this case for re-sentencing), and that a district court has discretion to vary from an advisory range, subject only to deferential appellate review for reasonableness. However, a district court must consider the guideline range, see § 3553(a)(4), and is usually well

advised to follow the Sentencing Commission's advice, in order to assure fair, proportionate, and uniform sentencing of criminal offenders.

      B.      <u>A Sentence within the Guidelines Range Is Appropriate And Reasonable In Light Of the Serious Nature Of Defendant's Criminal Conduct.</u>

There can be no question that the defendant engaged in serious crimes that harmed individuals and businesses (particularly startup fashion clothing businesses). Given the nature of the defendant's criminal conduct and the impact and the harm to the public, the United States believes that a significant sentence of incarceration within the range of the Sentencing Guidelines would account reasonably for the seriousness of her crimes and provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A).

      C.      <u>A Sentence within the Guidelines Range Is Necessary for Both General and Specific Deterrence</u>

The defendant has not shown any remorse for her conduct and, in fact, has continued to deny responsibility for the fraudulent scheme. <u>See</u> Pre-Sentence Report ¶ 24. It is the government's position that a significant period of incarceration is much more likely to deter the defendant from further criminal conduct. Additionally, as the defendant's conduct has shown, the opportunity to commit fraud on a massive and multinational scale is significant in the Internet Age. A significant period of incarceration is absolutely necessary to ensure accountability for people's actions on the Internet. The sentence of the Court will be a significant message to others who might emulate the defendant's criminal conduct, and a significant departure would certainly harm general deterrence.

D. <u>As before, there is nothing in the defendant's family situation that is sufficient to justify a downward variance</u>

The government has been informed that the defendant intends to present evidence about the alleged affect of the defendant's incarceration on her children. "[F]amily ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." USSG § 5H1.6. As family ties are a discouraged factor, the Court "should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." <u>Koon v. United States</u>, 518 U.S. 81, 96 (1996).

There is no doubt that a sentence of incarceration has and will continue to affect the Defendant's relationships with her children. But there is absolutely nothing exceptional about family relationships such as that described by the Defendant. <u>See, e.g.,</u> <u>United States v. Wilson</u>, 114 F.3d 429, 433-34 (4th Cir. 1997) (fact that defendant "rose above his [disadvantaged upbringing" to care for his own children not sufficiently "extraordinary" to support downward departure). <u>Accord</u> <u>Elliot v. United States</u>, 332 F.3d 753, 768-69 (4th Cir. 2002) (defendant's being primary caregiver to chronically ill husband not sufficiently "extraordinary" to support downward departure); <u>United States v. Rybicki</u>, 96 F.3d 754, 759 (4th Cir. 1996) (defendant's responsibility for wife and son, both with medical problems, insufficient basis for downward departure); <u>United States v. Weddle</u>, 30 F.3d 532, 540-41 (4th Cir. 1994) ("a defendant's status as a single custodial parent" insufficient basis for departure."); <u>United States v. Brand</u>, 907 F.2d 31, 33 (4th Cir. 1990) (finding that the "sole, custodial parent is not a rarity in today's society, and imprisoning such a parent will by definition separate the parent from the children."). The general nature of the problems described by the Defendant are problems millions of families have every

9

day. That, in itself, is not sufficient to ignore the jury's verdicts and the harm done by the Defendant's illegal scheme.

According to the testimony at trial, the Defendant used her fraudulent scheme to financially benefit her children. First, many of the purchases of clothing that she claimed showed she was buying clothing to fulfill customer orders were, in fact, children's clothing (which the evidence showed she did not sell). Buying high fashion clothing for your children with stolen money does nothing to lessen the impact on her victims or ameliorate her actions. Second, the Defendant's husband testified that the Defendant paid for special and very expensive schooling for their son who has a learning disability using funds from her clothing business. Again, while this may be a positive contribution to the health and life of their son, illegal conduct cannot be excused because the stolen money may be used in potentially positive way. Such considerations will generally lead to lawlessness, as nearly every Defendant will be able to rationalize illegal conduct by doing something positive with their illegal proceeds.

Simply put, the Defendant has shown and can show "nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally disrupts [familial] relationships." United States v. Cacho, 951 F.2d 308, 311 (11th Cir. 1992) (citation omitted). As a result, the Defendant has not offered any permissible justification for a downward departure and has certainly not shown her situation is extraordinary. To treat her differently on the basis of this record would defeat the principle of consistent sentencing.

## IV. CONCLUSION

The United States believes that the Sentencing Guidelines establish a reasonable sentencing range of 46-57 months that appropriately accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Neil H. MacBride
United States Attorney

By:          /s/
Jay V. Prabhu
Attorney for the United States of America
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave
Alexandria, VA 22314
Phone: 703-299-3700
Fax: 703-299-3981
Jay.Prabhu@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of October, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF, which will then send a notification of such filing (NEF) to the following:

John Kenneth Zwerling
Zwerling, Leibig & Moseley, P.C
108 North Alfred Street
Alexandria, VA 22314
jz@zwerling.com

*Counsel for Ingrid Dina Levy*

        /s/
Jay V. Prabhu
Attorney for United States
U.S. Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
FAX: 703-299-3981
Email Address: jay.prabhu@usdoj.gov