IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE No. 1:07-cr-265 (JCC) |
| Plaintiff, | : | |
| v. | : | **DEFENDANT'S RESENTENCING** |
| INGRID DINA LEVY, | : | **MEMORANDUM** |
| Defendant. | : | |

COMES NOW the defendant, INGRID DINA LEVY, by and through counsel, and respectfully submits to this Honorable Court her position with regard to sentencing. On June 12, 2008, this Court sentenced Ingrid Dana Levy to 46 months' imprisonment and recommended that she be designated by the Bureau of Prisons to serve her sentence at a Federal Prison Camp. Because she is a deportable alien, the Bureau of Prisons was unable to follow the Court's recommendation and instead designated her to the Federal Correctional Institution (FCI) at Danbury, Connecticut, a facility that houses many female offenders who, unlike Ingrid Levy, have been sentenced for serious drug and property crimes, and who have serious prior records, including histories of violence.

On June 30, 2009, the United States Court of Appeals for the Fourth Circuit affirmed Mrs. Levy's conviction but reversed her sentence because it found that this Court had erroneously determined that it did not have discretion to sentence her below the 46-57 month advisory Sentencing Guidelines range. The case is now before the Court for resentencing. On October 23, 2009, this Court will be required to impose a sentence that is "sufficient, but not

1

greater then necessary," 18 U.S.C. § 3553(a), to fulfill the purposes of sentencing listed under *id* (a)(2). *United States v. Booker,* 543 U.S. 220, 259-60 (2005). Section 3553(a) identifies these purposes as follows:

    (a)    provide <u>just</u> punishment for the offense;

    (b)    afford adequate deterrence to criminal conduct;

    (c)    protect the public from further crimes of the defendant; and

    (d)    to provide the defendant with needed medical care or other correctional treatment in the most effective manner.

18 U.S.C. §3553(a)(2) (emphasis added).

For the reasons discussed in this memorandum, a sentence of a year and a day,[1] followed by supervised release with a special condition that Mrs. Levy serve 36 months (in effect, just over the remainder of the previously-imposed sentence) in a halfway house and/or home confinement, pay restitution and then voluntarily submit to deportation. Such a sentence would be sufficient, but not greater than necessary, to achieve the purposes of sentencing listed in §3553(a).[2]

In determining a *just* punishment, § 3553(a)(1) mandates that the Court consider the nature and circumstances of the offense as well as <u>the history and characteristics of the defendant</u>. There are three reasons why Ingrid Levy's history and characteristics cause her and her family to suffer a greater punishment than the normal defendant would experience from the

---

[1] A year and a day with good conduct time deducted will enable Mrs. Levy to be released with an approximate time served sentence to return to her son Dylan.

[2] A downward departure, if not a variance, is also appropriate here. U.S.S.G. § 5H1.6(B)(iii) provides for a departure where "the loss of caretaking … is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking … irreplaceable to the defendant's family."

same term of imprisonment. It is for these reasons that the sentence requested would be sufficient, but not greater than necessary to achieve the goals of sentencing. First, Mrs. Levy's nine-year-old son, Dylan, suffers from a serious disorder known as Pervasive Development Disorder, NOS.[3] This is a severe disorder only somewhat less debilitating than full autism. It is characterized by a severe impairment in social interaction, failure to develop normal peer group relations, along with significant language development delays. It requires intensive special education and therapies in order to ameliorate the symptoms and impaired development.

At the previous sentencing, prior counsel briefly noted that Dylan needed the personal attention of his mother to help him overcome his disorder, and that without her help, he might deteriorate. Unfortunately, prior counsel's concern has proven to be well founded. Separation from his mother has been catastrophic. At resentencing, the defendant will present the testimony of Deborah Weinstock, Ph.D. (CV attached), an Educational Psychologist and Professor of Special Education specializing in the treatment of this disorder. Dr. Weinstock has been treating Dylan for the past several months and has seen him on numerous occasions. She will testify as to his current condition, the impact his mother's incarceration has had on his condition, and his prognosis. She is expected to testify that not only has Dylan suffered tremendously over the past ten months, but that his condition has seriously worsened. She is also expected to testify that the sentence requested would stop this decline and begin to reverse the damage caused by Dylan's separation from his mother.

The testimony of Dr. Stephen Billick, M.D. (CV attached), a preeminent child psychiatrist, will also be presented. Dr. Billick will testify that:

> Dylan had been making progress due to the education supports, the

---

[3] American Psychiatric Association: Diagnostic Statistical Manual, 4th Edition, Text Revised, pp. 69-84, Washington, DC 20001.

3

therapeutic interventions and the extensive home interventions instituted by mother. Mother had provided afternoon, evening and weekend interventions which she was taught by the McCarton Center and also the other therapists involved. She was excellent at 'how to get through to the child.' However, mother's incarceration has been extremely detrimental to Dylan's progress and he has been backsliding. Since her incarceration, there has been no one to help at home with her high degree of "warmth and patience." With the significant amount of current educational support, Dylan should have improved more. Father took Dylan to Debra Weinstock, Ph.D. for treatment. She found that he was quite sweet but that his anxieties and immaturity interfered with his school performance. She also found comprehensive problems, poor frustration tolerance with emotional lability (rapid changes in temper, ups and downs). He also somaticizes and has stomach aches with the need to go to the bathroom toilet. She felt he was depressed since mother's incarceration and was having an emotional shutdown with decreased executive functioning. She found he had a detached and dissociative state, overwhelmed. She noted he found it difficult to talk about his mother and her absence. Father confirmed that Dylan has refused to go to the prison to visit mother, and that when he talks to her on the phone, Dylan sobs and cries.

He will also testify that:

> Dylan is a significantly disordered child who has been suffering a superimposed depression since the incarceration of his mother. Whereas all children have some expected degree of anxiety and sadness from a parental incarceration, for Dylan this is far more severe and is actually quite catastrophic. Mother was the single strongest source of emotional, social and education support for him throughout his life-long struggle with his significant developmental delays. This is a child with extensive special needs which were being met and remediating his condition, demonstrating improvement. The dramatic deterioration since mother's incarceration has crippled his progress. If his mother could be sentenced to serve her time in such a way as to be available again to Dylan, this reversal could be stopped and he could again profit from the considerable educational and social support (including mother's significant contribution) which he receives.

Second, because Mrs. Levy is a French national and not a U.S. citizen, she will be deported to France once she is released from custody. To keep the family together, her husband

4

Joe and their three children, Dylan, Savannah, age 7, and Dakota, age 3, plan to move to France once she has served her sentence. Drs. Weinstock and Billick will testify at sentencing that the move will likely be damaging to Dylan. For example, because Dylan's condition makes language difficult for him, it is unlikely that he will ever be able to communicate in French, leaving him even more isolated and in need of assistance. He is also unlikely to be able to receive the same kind of educational assistance he enjoys in this country. Living in France will also be difficult for Ingrid Levy's husband, Joseph. Not only does Mr. Levy speak no French, it has always been difficult for him to learn a second language. This will make it especially difficult for him to find work in France. It is also unclear what kind of work he would be qualified to perform there. For the past 25 years, he has earned his living in the United States as a real estate investor. Because he knows nothing about the real estate market in France, he will not be able to continue to earn a living in that field.

Finally, although this Court recommended at the previous sentencing that Mrs. Levy be housed in a federal prison camp, she has instead been housed in a much more onerous facility where she, a very slight woman, has experienced terrible conditions of confinement. The defendant will present testimony concerning this at the re-sentencing as well as the conditions of her confinement while in transit to this hearing. Opened in 1940, FCI Danbury is an aging and closed institution. Externally there is a secure perimeter to prevent escape by serious offenders, and internally inmate movement is more restricted, with greater staff supervision than at a Minimum security open camp facility. Such measures are obviously needed for offenders who have committed serious property, narcotic, and violent offenses or who have serious prior criminal records. Although Ingrid Levy would normally qualify for an open minimum security camp, because she is a deportable alien, she must be housed in at least a Low security facility.

Since she has been required to serve harder time than this Court originally thought appropriate, a shorter period of incarceration is necessary to achieve the same degree of punishment. *See United States v. Smith,* 27 F.3d 649 (D.C. Cir. 1994) (recognizing, even pre-*Booker*, that a downward departure may be appropriate if a deportable alien would face more serious and/or harsher prison conditions than a citizen, including the ineligibility to serve time at a minimum security facility).

There is no happy ending here. Mrs. Levy will be deported, her family will have to re-locate to France or remain behind, thus further deepening the Levy family tragedy. Mrs. Levy's sentence of 46 months imprisonment only aggravates the inevitability of deportation. Halfway house/home confinement component will assist this family in transitioning their re-location. If Mrs. Levy were more available to her family, she could help the children learn French, free up some of her husband's time to investigate employment opportunities, and help prepare her son, Dylan for the move.

## CONCLUSION

For the foregoing reasons, as well as for any additional reasons presented at the resentencing hearing, this Court should depart downward from the low end of the guideline range on the basis of extraordinary family circumstances and status as a non-citizen and/or grant a variance under 18 U.S.C. § 3553 and impose a sentence of a year and a day, followed by a term of supervised release with a special condition that Mrs. Levy serve 36 months or less in a halfway house and/or home confinement, pay full restitution and then voluntarily submit to deportation.

Respectfully submitted,

INGRID DINA LEVY
By Counsel


/s/
JOHN KENNETH ZWERLING
     Attorney for Ingrid Dina Levy
VA Bar No. 8201
Zwerling, Leibig & Moseley, P.C.
108 N Alfred St
Alexandria, Virginia 22314
Ph: (703) 684-8000
Fax:(703) 684-9700
jz@zwerling.com


/s/
ALAN ELLIS
*Pro hac vice* attorney for
     Ingrid Dina Levy
PA Bar No. 17430
495 Miller Avenue, Suite 201
Mill Valley, CA 94941
Ph: (415) 380-2550
Fax:(415) 380-2555
Aelaw1@aol.com

# CERTIFICATE OF SERVICE

I hereby certify that on the 16th of October, 2009, I electronically filed the foregoing with the Clerk of Court using CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Jay Prabhu, Esq.
>Assistant United States Attorney
>United States Attorney's Office
>2100 Jamieson Avenue
>Alexandria, Virginia 22314
>Ph: (703) 299-3700
>Fax:(703) 299-3981
>Jay.Prabhu@usdoj.gov

/s/
JOHN KENNETH ZWERLING
Attorney for Ingrid Dina Levy
VA Bar No. 8201
Zwerling, Leibig & Moseley, PC
108 N Alfred St
Alexandria, Virginia 22314
Ph: (703) 684-8000
Fax:(703) 684-9700
jz@zwerling.com